UNITED STATES BANKRUTPCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| In re<br><br>LBH NATIONAL CORPORATION<br>EIN: 46-4574404<br><br>          Debtor. | Chapter 11<br><br>Case No.:  16-16247-MER<br><br>Re: Docket No. 12 |

**OBJECTION TO MOTION FOR APPROVAL AND USE OF RETAINER AND ESTABLISHMENT OF PAYMENT PROCEDURE**

ERA Franchise Systems LLC ("ERA"), by and through its attorneys, LeClair Ryan, a professional corporation, hereby objects to the Motion for Approval and Use of Retainer and Establishment of Payment Procedure filed by LBH National Corporation ("Debtor" or "LBH") at Docket No. 12 (the "Retainer Motion").

## I.     RELEVANT BACKGROUND

A.     **The ERA – LBH/Herman Agreements.**

1.     LBH and ERA entered into a Real Estate Franchise Agreement with an effective date of February 25, 2014.  A copy of the Real Estate Franchise Agreement is attached at Exhibit "A" to the Notice of Perfection of Security Interest in Property and Objection to the Use of Cash Collateral filed on by ERA at Docket No. 23 and 28 (the "Cash Collateral Objection"). The Real Estate Franchise Agreement, together with all addendums thereto executed by the parties are collectively referred to as the "Franchise Agreement".

2.     By virtue of the Franchise Agreement, LBH became a franchisee of ERA and was authorized to operate a real estate brokerage business initially at eighteen offices located in California (collectively, the "Approved Locations").  Pursuant to the Franchise Agreement, LBH

obtained the non-exclusive right to use new tradenames, trademarks and service marks of ERA at and in connection with Approved Locations and was also authorized to participate in the ERA franchise system.

3. On or around February 20, 2014, Roger A. Herman executed and conveyed a Guaranty of Payment and Performance of the obligations of LBH to ERA. See **Exhibit "A"** to Cash Collateral Objection at p. 31-32.

4. On or around February 20, 2014, LBH, Roger A. Herman and Kimberly S. Herman executed and conveyed a Conversion Promissory Note to ERA in the original principal amount of $1,500,000 (the "Conversion Note"). A copy of the Conversion Note is attached at **Exhibit "B"** to the Cash Collateral Objection.

5. To secure the obligations of LBH under the Franchise Agreement, Conversion Note and all other agreements between LBH and ERA, LBH executed and conveyed a Security Agreement to ERA which granted ERA a security interest in: ". . . *all accounts, accounts receivable; contract rights; leases; furniture; furnishings; equipment; fixtures; machinery; accessories; movable trade fixtures; goods held for sale or being processed for sale in [LBH's] business, including all supplies, finished goods and all other items customarily classified as inventory; building improvement and construction materials; chattel paper; instruments; documents; letters of credit; all funds on deposit with any financial institution; commissions; real estate listings and listing Agreement and related rights which are located at or related to the residential real estate brokerage business conducted by [LBH] and including the proceeds and products therefrom and any and all substitutions, replacements, additions and accessions thereto and any rebate/award program (or similar incentive programs) to which [LBH] may be entitled pursuant to any franchise Agreement entered into with [ERA], together with all such rights and*

*property hereafter acquired by [LBH], and all general intangibles (collectively the "Collateral"), as well as all parts, replacements, substitutions, profits, products and cash and non-cash proceeds of the foregoing Collateral. . . ."*

The Collateral identified in the Security Agreement is referred to as the "ERA Collateral". A copy of the Security Agreement is attached at **Exhibit "C"** to the Cash Collateral Objection.

6. The security interest granted to ERA was perfected by ERA by, among other things, the filing of UCC-1 Financing Statement on February 25, 2014 with the Secretary of State of California at filing number 20147400723583. A copy of the UCC-1 financing statement is attached at **Exhibit "D"** to the Cash Collateral Objection.

**B. The California Litigation and the Restriction of the Debtor's Pre-petition Use of the ERA Collateral.**

7. On February 22, 2016, ERA filed a Complaint in the Superior Court of California, County of Los Angeles, against LBH and others, Case No.: YC071137, (the "California Action"). In the California Action, among other things, ERA asserts that: (a) LBH breached its obligations under the Franchise Agreement, Conversion Note and Security Agreement (collectively, the "Agreements"); (b) LBH failed to cure noticed defaults under the Agreements; (c) ERA rightfully terminated the Franchise Agreement, accelerated the amounts due under the Conversion Note and demanded compliance by LBH of its obligations under the Security Agreement; and (d) LBH is indebted to ERA in an amount in excess of $6,000,000 under the Agreements.

8. On April 28, 2016, a Temporary Restraining Order (the "TRO") was entered in the California Action which, among other things, directed: "*[t]hat ERA Franchise System, LLC's Collateral, and the proceeds thereof, shall not be used by LBH except to pay for budgeted and*

3

*current ordinary course of business operating expenses (the "Approved Expenses") and, in particular, shall not be used to make distributions to Roger A. Herman or in connection with any intercompany transfer (including transfers to THG, LLC or Sunbelt Realty, Inc.)[1] or to pay antecedent debt to creditors junior to ERA Franchise Systems, LLC (including Prudential and Community Bank). All proceeds of the Collateral which are not used to satisfy Approved Expenses shall be held by LBH in a segregated escrow account (the "Escrow Account") and shall not be disbursed pending further Order of this Court."*

A copy of the TRO is attached at **Exhibit "E"** to the Cash Collateral Objection.

9. On June 15, 2016, an order was entered in the California Action granting possession of ERA Collateral to ERA (the "Possession Order"). A copy of the Possession Order is attached at **Exhibit "F"** to the Cash Collateral Objection. Pursuant to Section 5g of the Possession Order, LBH was *". . . ordered to transfer possession of the property described in item 3c to . . ."* ERA. As noted in the Possession Order: *"[f]ailure to comply with an order of the court to turn over possession of such property to the plaintiff may subject [LBH] to being held in contempt of court."* In addition, Section 5f of the Possession Order authorized the sheriff/marshal to enter into LBH places of business to take possession of the subject property identified in the order.

10. Despite demand, LBH did not comply with the Possession Order. Despite demand, none of the ERA Collateral has been identified, marshalled or turned over to ERA.

11. Based upon information received from the Debtor on June 29, 2016, it appears that LBH may have violated the TRO and Possession Order by transferring hundreds of

---

[1] The Herman Group, LLC ("THG") and Sunbelt Realty, Inc. ("Sunbelt") are affiliates of the Debtor. Upon information and belief, the Debtor, THG and/or Sunbelt engaged in significant prepetition transfers/transactions - the extent and propriety of which have not been disclosed. ERA reserves all rights and remedies in connection with the transfers, transactions and relationships between LBH, THG, Sunbelt, and other insiders.

thousands of dollars from April 28, 2016 through the petition date of June 24, 2016. ERA reserves all rights and remedies with respect to any demonstrated violations of the TRO and/or Possession Order by the Debtor and insiders of the Debtor.

C. **The Bankruptcy Filing.**

12. On June 23, 2016 (the "Petition Date"), LBH filed a voluntary chapter 11 bankruptcy proceeding with this United States Bankruptcy Court for the District of Colorado. Docket No. 1. LBH filed a "short form" petition and has not yet filed schedules for a statement of financial affairs. Therefore, the extent of the Debtor's assets, liabilities and financial transactions (including transactions with insiders) is unknown.

D. **ERA's Objection to the Use of Cash Collateral.**

13. ERA noticed proposed counsel for the Debtor of ERA's objection to the use of its cash collateral on the Petition Date and, at that time, requested that the Debtor provide a budget detailing any requested use of cash collateral by LBH. LBH had not provided a proposed cash collateral budget to ERA, as of the filing of the Retainer Motion.

14. ERA continues to object to the use of its cash collateral by LBH. On June 29 2016, ERA filed the Cash Collateral Objection demonstrating its senior perfected security interest in the ERA Collateral.

E. **The Retainer Motion.**

15. LBH filed the Retainer Motion on June 28, 2016. Based upon the information which has been provided (and which has not been provided) by LBH, ERA objects to the Retainer Motion.

16. On the Petition Date, the Debtor also filed an Application seeking to employ Kutner Brinen, P.C. (the "Firm") as bankruptcy counsel. Docket No. 6. The Debtor seeks to

engage the Firm pursuant to Federal Rule of Bankruptcy Procedure 2014 and 6003. Additionally, the Firm attaches the Verified Statement of Lee M. Kutner in support of the Application (the "Kutner Statement"). Id.

17. In the Kutner Statement, the Firm discloses that it "has investigated its files to the greatest extent possible prior to filing this case and it does not appear that the Firm has represented any of Debtor's creditors." See Kutner Statement at ¶ 4. The Firm also discloses that it has "provided limited services to The Herman Group, LLC." Id. The Herman Group, LLC's ("THG") principal owner is Roger A. Herman, who is also the principal owner of the Debtor. Id. The Firm submits it knows of no material claims between the Debtor and THG. Id.

18. The Firm has accepted a retainer in the total amount of $32,965; $30,000 of which was paid by the Debtor, and $2,965 of which was paid by THG (the "Retainer"). See Application at ¶ 10. The Firm maintains that the retainer is property of the estate. Id.

19. Through the Retainer Motion, the Debtor requests that this Court approve the use of the Retainer by the Firm, and to establish a going-forward payment procedure for the Firm.

20. **The Debtor's funds that are part of the Retainer are part of the ERA Collateral. In fact, the Debtor has provided information to ERA reflecting that $30,000 of the Retainer was wired by LBH to the Firm on June 23, 2016. The Debtor did not obtain relief in the California Action to use the ERA Collateral for such purposes. Additionally, ERA does not consent to the use of the ERA Collateral to pay a retainer to the Debtor's counsel.**

## II.   ARGUMENT

21. This Court should not authorize the use of the Retainer. The Retainer consists largely of pre-petition ERA Collateral. As a matter of law, the Debtor cannot use the ERA

Collateral to pay its counsel a retainer. Additionally, the Debtor is barred from using the ERA Collateral for any purpose outside the ordinary course of business pursuant to two separate orders in the California Action. Additionally, ERA is filing a limited objection to the retention of the Debtor's counsel and until such objection is resolved, the Retainer should not be utilized. For similar reasons, the Debtor should not be allowed to pay its counsel on a going forward payment procedure from the ERA Collateral.

22. To date, the Debtor has obtained permission or an agreement from ERA to use its cash collateral. Similarly, the Debtor has not secured an order allowing it to use the cash collateral of ERA. Through the Security Agreement, ERA holds a valid lien on all accounts and account receivable of the Debtor, which includes the $30,000 in cash the Debtor paid to the Firm as a retainer for the Firm's representation of Debtor in this bankruptcy case. ERA refers to and incorporates herein the Cash Collateral Objection.

23. As the court explained in In re Shafer Bros. Constr., Inc., 525 B.R. 607 (Bankr. N.D.W. Va. 2015), unearned portions of a pre-petition retainer become property of the estate upon a debtor's bankruptcy filing, citing, In re Equip. Servs. Inc., 290 F.3d 739, 746 (4th Cir.2002). As property of the bankruptcy estate, a retainer may also constitute cash collateral if the funds are subject to a perfected security interest. Id. If a retainer consists of cash collateral, the Debtor may not use cash collateral for any purpose without permission of ERA or by Order of this Court that ensures ERA is adequately protected. See CS First Boston Mortgage Capital Corp. v. RV Centennial P'ship (In re Centennial P'ship), 202 B.R. 774, 778 (Bankr. D. Colo. 1996).

24. Similarly, there are numerous cases in which courts have ordered the disgorgement of retainers that constituted cash collateral. In In re 1560 Wilson Boulevard, L.P.,

206 B.R. 819 (Bankr. E.D. Va. 1996), the court held that a retainer paid to debtor's counsel from a secured lender's cash collateral must be disgorged. Cf. In re Hall Colltree Assocs., 146 B.R. 675 (Bankr. E.D. Va. 1992). In Jefferson Business Center Assocs., 135 B.R. 676 (Bankr. D. Colo. 1992), the court held that post-petition rent proceeds subject to a bank's pre-petition perfected security interests could not be used to pay a retainer to debtor's counsel.

25. Additionally, the Debtor's payment of the Retainer was in violation of the orders in the California Action. The TRO in the California Action prohibited the Debtor from using ERA Collateral for anything other than approved ordinary course expenses. The payment of the Retainer was neither an ordinary course transaction, nor approved by the court or ERA. The Possession Order required the Debtor to deliver the ERA Collateral to ERA. Rather than doing so, the Debtor used the ERA Collateral to pay the Retainer. The filing of bankruptcy did not vest the Debtor with any rights to property than it held immediately prior to the bankruptcy filing. As the Debtor was not authorized to pay the Retainer by virtue of the orders in the California Action, this Court should not sanction the Debtor's violation of those orders an authorize the use of the Retainer.

26. Finally, to the extent that the Debtor seeks a "procedure" to pay ERA Collateral to its counsel on a going forward basis, such a procedure must also be rejected for the reasons set forth above.

### III. CONCLUSION

For the forgoing reasons, ERA respectfully submits that the Retainer Motion should be denied and that the $30,000 portion of the Retainer should be disgorged to the Debtor, subject to ERA's lien, security interest and possessory interest.

Dated: June 29, 2016	Respectfully submitted,

                                                **LeClairRyan, a Professional Corporation**

/s/ Daniel M. Eliades
Daniel M. Eliades, Esq.
(N.J.D.C. No. DME-6203)
LeClairRyan, a Professional Corporation
One Riverfront Plaza, 16th Floor
1037 Raymond Boulevard
Newark, New Jersey 07102
Telephone: (973) 491-3600
Facsimile: (973) 491-3555
Email: daniel.eliades@leclairryan.com

*Attorneys for ERA Franchise Systems LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 29, 2016, I served by ECF, e-mail and prepaid first class mail a copy of the foregoing Objection to Motion for Approval and Use of Retainer and Establishment of Payment Procedure on all parties against whom relief is sought and those otherwise entitled to service pursuant to Fed. R. Bankr. P. and the L.B.R. at the following addresses:

Lee M. Kutner
Kutner Brinen, P.C.
1660 Lincoln St., Ste. 1850
Denver, CO 80264

Paul Moss
Office of the U.S. Trustee
Byron G. Rogers Federal Building
1961 Stout St.
Ste. 12-200
Denver, CO 80294

/s/ Daniel M. Eliades
Daniel M. Eliades